**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAHAR WERTHEIMER, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>    v.<br><br>MEDIFY AIR, LLC,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Sahar Wertheimer ("Plaintiff") brings this action on behalf of herself, and all others similarly situated, against Medify Air, LLC ("Defendant" or "Medify"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is an action arising from the false and misleading representations that Defendant made for years about its Medify MA-25, and MA-40 air purifiers (the "Air Purifiers"), along with their respective replacement filters (collectively, the "Products").

2. Specifically, Defendant represented that the Air Purifiers were equipped with "True" High Efficiency Particulate Air (HEPA) filters when in fact, they were not. Defendant also represented that the replacement filters it sells for the Air Purifiers are "True HEPA H13" or "HEPA H14" filters when in fact, they were not.

3. Independent testing by Plaintiff's counsel has shown that the filters used in the Air Purifiers and the replacement filters do not meet HEPA standards.

4. Reasonable consumers have had no opportunity to find this out for themselves because they cannot conduct HEPA standard testing.

5. Defendant knew this but continued hocking its wares, making a killing selling the Air Purifiers *and* replacement filters since the outset of the COVID-19 pandemic. Defendant sold its Products on Amazon.com, among other retailers.

6. Defendant has profited greatly from the explosion in the air purifier market brought about by the COVID-19 pandemic and yearly "once-in-a-lifetime" wildfires that have ravaged the United States. Consumers are rightfully concerned about maintaining indoor spaces that are free of harmful pathogens and contaminants. As a result, a large portion of Defendant's gargantuan profits are attributable to its false HEPA filtration claims.

7.      But for Defendant's HEPA claims, the fair value of its Air Purifiers would have been substantially lower (i.e., their market price would have been closer to non-HEPA air purifiers, which sell at a discount compared to air purifiers with HEPA filters).  Put differently, Defendant's HEPA misrepresentations allowed it to overcharge consumers in the amount of the HEPA-related price premium—assuming there would be a market for Defendant's non-HEPA filters at all.

8.      Relatedly, Defendant's false and misleading representations induced reasonable consumers like Plaintiff into purchasing the Products.  Had Plaintiff and all other similarly situated consumers known that — contrary to Defendant's knowing representations — the Products did not have HEPA filters, they would have paid less for the Products or not purchased them at all.

9.      Plaintiff is now seeking a return of the HEPA-related premiums that Defendant charged for its Products, on behalf of herself and other similarly situated purchasers, and asserts claims for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (iv) fraud; and (v) unjust enrichment.

## PARTIES

10.     Plaintiff Sahar Wertheimer is a citizen of California, and resides in the city of Los Angeles, California.  During the Summer of 2022, while in California, Plaintiff Wertheimer purchased a two-pack of the Medify MA-25 Air Purifier from Amazon for approximately $285.   In January of 2025, while in California, Plaintiff Wertheimer purchased two Medify MA-25 Air Purifiers from Amazon for about $120 each.   Plaintiff Wertheimer reviewed and relied on Defendant's warranties and representations about the Products' HEPA filtration capabilities prior to purchasing the Products.  Specifically, Plaintiff Wertheimer saw that the Products were labeled "HEPA" on the Amazon.com listing.

11.     Plaintiff Wertheimer reasonably relied on Defendant's representations and believed that the Products had HEPA filters.  Had Defendant not warranted and represented that the Products had HEPA filters, Plaintiff Wertheimer would not have purchased the Products or would have paid substantially less for them.

12.     Defendant Medify Air, LLC is a Florida company with headquarters in Boca Raton, Florida.  Medify manufactures, distributes, advertises, and sells the Products.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) some members of the proposed Class have a different citizenship from the defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

14.     This Court has personal jurisdiction over Defendant Medify Air, LLC because it markets and sells the Products in California.

15.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District; at least one Plaintiff resides within this District; and a substantial part of the events giving rise to at least one of the Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS

### A.     Air Purifiers And The Air-Purifier Market

16.     The Environmental Protection Agency estimates that "about 67 million tons of pollution were emitted into the atmosphere in the United States" in 2021 alone.  This pollution comes at great cost to human health: "[p]oor air quality is responsible for an estimated 100,000 premature deaths in the United States each

year." Exposure to air particulates has also been linked to symptoms of depression, cognitive decline, and increased feelings of anxiety.

17.     Air pollution can also be a visceral reminder of human-driven climate change: the smoke from wildfires that have raged across both coasts of the United States since 2020 has quite literally blocked out the sun and forced millions of people indoors. For many, the smoke has exacerbated health conditions such as asthma or emphysema.

18.     As a result, public concern about air pollution is high. In fact, one 2019 survey found that, of about 1000 responses, 43% of respondents indicated that they had a "great deal" of concern about air pollution in the United States and 31% indicated that they had a "fair amount" of concern about air pollution. Taken together, 74% of respondents expressed concern about air pollution. This is in line with the EPA's concerns—the agency places indoor air pollution among the top five environmental health risks.

19.     Concern about air quality skyrocketed in 2020, however, as wildfires intensified and the airborne COVID-19 virus shut down the globe.

20.     As expected, consumer concern over airborne contaminants has helped the air-purifier market explode, from $8.05 billion in 2019 to $16.83 billion in 2024:[1] "the COVID-19 pandemic has increased the demand for air purifiers, with the growing awareness of COVID-19 associated respiratory ailments and the rising need to curb cross-contamination. Factors such as increasing airborne diseases and growing health consciousness among consumers are driving the market."

21.     Air purifiers come in various forms. Among the most effective purifiers are those with HEPA filters. HEPA, as defined above, is an acronym for "High

---

[1] Research and Markets, *Air Purifier Market – Growth, Trends, COVID-19 Impact, and Forecasts (2022–2027)*, WWW.RESEARCHANDMARKETS.COM, https://www.researchandmarkets.com/reports/4987153/air-purifier-market-growth-trends-covid-19 (last visited September 3, 2024).

Efficiency Particulate Air."  HEPA filters are strictly designed and must adhere to certain specifications to be designated as HEPA.

22.    Specifically, a HEPA filter is a type of pleated mechanical filter that typically consists of sheets of randomly arranged fiberglass or plastic fibers held in an accordion shape by aluminum separators.  To be called a HEPA filter, the filter must capture at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size ranging from 0.1 to 0.3 microns.

23.    According to the Centers for Disease Control and Prevention (CDC), HEPA filters "are the most efficient filters on the market for trapping particles that people exhale when breathing, talking, singing, coughing, and sneezing."[2]

24.    For example, even though the SARS-CoV-2 virus is about 0.125 microns in diameter, the CDC has stated that "air purifiers can help reduce airborne contaminants, including viruses, in a home or confined space."[3]

25.    The reasons why consumers may care that the air purifier they purchase meets the HEPA standard is self-evident.  It offers near certain protection against the transmission of airborne pathogens in the home (if the purifier is given enough time to circulate the air), and it can also filter out pollution caused from events like wildfires, which are growing ever more frequent.

26.    Consumers want the assurance that the HEPA standard provides, and they are willing to pay more for HEPA filters, i.e., consumers are willing to pay a premium for filters that meet the HEPA standard. A review of current sales prices, across brands that sell both HEPA and non-HEPA filters (what marketers sometimes call "HEPA-type" purifiers), indicates that HEPA purifiers sell—on average—at a 41% premium to non-HEPA filters within the same brand:

---

[2] CENTER FOR DISEASE CONTROL AND PREVENTION, Improving Ventilation in Your Home, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/improving-ventilationhome (last accessed September 3, 2024).
[3] Id.

**TABLE A**

| Model | HEPA | | | Non-HEPA | | | HEPA premium |
|---|---|---|---|---|---|---|---|
| | Price | Coverage | Price/sf | Price | Coverage | Price/sf | |
| Molekule | $1,015 | 1,000 sf | $1.02 | $600 | 1,000 sq/ft | $0.60 | 41% |
| Holme | $40 | 80 sf | $0.50 | $35 | 109 sq/ft | $0.32 | 36% |
| Crane | $90 | 250 sf | $0.36 | $61 | 300 sq/ft | $0.20 | 44% |
| Therapure | $180 | 200 sf | $0.90 | $180 | 343 sq/ft | $0.52 | 42% |
| **Average premium:** | | | | | | | **41%** |

27.    Being able to make a 99.97% "HEPA-filtration" claim is thus a huge boon for manufacturers, and they know it.  The HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration.

28.    Accordingly, the phrase "True HEPA" is now ubiquitous in air purifier marketing, including in Defendant's.  The reason for this is that the phrase carries weight.  It is a signal of quality to consumers—that the air purifier they are buying is of a high grade and worth more than purifiers that do not have a HEPA filter.  Though consumers may not know the filtration efficiency requirements of the HEPA standard, or the technicalities of the various HEPA-standard testing protocols, they recognize the HEPA acronym and are willing to pay more for air purifiers that have it in their marketing and labeling.  If having a HEPA filter was not material to consumers, then manufacturers like Defendant would not advertise the feature so heavily.  In fact, given consumer preference for HEPA filters, there are few, if any, non-HEPA filters left on the market, i.e., there is little to no demand for filters that do not bear the HEPA designation.

29.    The materiality to consumers of HEPA representations is further confirmed by enforcement actions taken by regulators including the Federal Trade Commission, which has, among other things, entered into Consent Decrees with manufacturers of air purifiers for claims made about the efficacy of their HEPA purifiers and filters.  *See, e.g., In the Matter of Honeywell,* FTC File No. 962-3154.

30.     Defendant's representation that its Products are "True HEPA" also carries greater significance to consumers—it communicates that there may be "false" or inauthentic HEPA filters out there, which Defendant assures consumers its Products are not.  The use of the term "True HEPA" is thus an affirmation by manufacturers like Defendant that "HEPA" is a standardized term with prescribed qualities.

**B.     Defendant's Products And Advertising**

30.     At issue in this action are two models of Medify HEPA air purifier, the MA-25 and the MA-40.   For purposes of this litigation, the two models are substantially similar: the MA-25 utilizes the "True HEPA H13" filter, and the MA-40 uses either a "True HEPA H13" or a "True HEPA H14" filter.



**Figure 1[4] - "True HEPA H13" Filter**

[4] https://www.amazon.com/Medify-Medical-Filtration-Air-Purifier/dp/B081NWVMCH/?th=1



**Figure 2[5] - "True HEPA H14" Filter**

31.    Defendant crafted common false and misleading HEPA representations on its packaging and in advertising for each of the Products.

32.    For instance, Defendant made the following express representations in the advertising for the Air Purifiers on the amazon website  (Figures 1 & 2):

     (a) True HEPA Filter.

     (b) Captures up to 99.99%* of particles to 0.1 microns including pet dander, smoke, and pollen

     (c) Removal to .1 microns

33.    Figure 3 and 4 are the listings of the product on the amazon website with Defendant's True HEPA and "removal to .1 microns" express representations.

---

[5] https://www.amazon.com/Medify-Replacement-Allergens-Pre-filter-Activated/dp/B09QS5M41Q/

1
2
3
4
5
6
7
8
9
10
11
12



**Figure 3 – Medify MA-25**

13
14
15
16
17
18
19
20
21
22
23
24
25



26
27

**Figure 4 – Medify MA-40 Model**

28

34.    Taken together, Defendant makes the same implied representation between both Products: that the filters used in the Air Purifiers had been tested and performed at or above the "HEPA" standards for filtration.  In reality, they had not.

**C.    Defendant's Products Are Tested And Fail To Meet Hepa Standards**

35.    As part of their investigation into the Products, Plaintiff's counsel commissioned a highly reputable and independent American laboratory to conduct testing on the Products.  The results of the testing prove that Defendant's Products' Filters are not HEPA-grade.

36.    The lab chosen by Plaintiff's counsel is often used by companies to validate their filters and is an industry leader in the rigorous and accurate testing of HEPA filters.  The lab is certified by ANAB/ANSI, a non-governmental organization that provides accreditation services and training to public and private-sector organizations.  Moreover, the lab is well known for its stringent adherence to the various HEPA testing protocols set forth by the European Union, the International Standards Organization, and the United States.

37.    The testing was conducted in accordance with European and American testing protocols.  In America, the protocol used to establish HEPA-grade is IEST-RP-CC001.7 (IEST).  In Europe, the protocol used to establish claims above HEPA-grade (e.g., 99.99% removal at .003 microns as claimed by Defendant) is ISO29463-5 (ISO).  Both protocols test for a filter's ability to filter out fine particles but employ differing methodologies and naming conventions.

38.    The results of the European ISO test are used to group filters into one of three Class: Efficient Particulate Air Filters (EPA), High Efficiency Particulate Air Filters (HEPA), and Ultra Low Penetration Air Filters (ULPA).  For purposes of the test, efficiency is defined as the filtration efficiency against the "most penetrating particle size."  Each class has subdivisions as well, depending on the filter's

efficiency.  Thus, a filter tested under the ISO standard which could filter between 85% and 95% of particles at the most penetrating size would be classified as an EPA 10, or "E10" filter.  A filter which captures the most penetrating particles at a rate of 99.999995% would be categorized as a ULPA 17, or "U17" filter.  HEPA filters can be H13 (99.95%) or H14 (99.995%) before bumping up to the U15 class (99.9995% efficiency).

39.    The American IEST protocol is a bit more straightforward.  To be classified as a HEPA filter, the filter must have a filtration efficiency of <u>at least</u> 99.97%.  Particles ranging in size from 0.1 microns to 5.0 microns are used in the test.  The test is done over eight stages, with each stage measuring the filtration efficiency for a subset of particle sizes (i.e., measuring how the filter performs for particles between 0.1 and 0.2 microns).

40.    When Defendant's MA-25 air purifier with the "True HEPA H13" filter was tested under the ISO standard the results were shocking.  The filtration efficiency at the most penetrating particle size (0.05 microns) was 67.373%.  This falls so far below the standard that it does not even qualify for an E10, the lowest possible grade (penetration at $\leq$ 15%).  See Figure 5 for MA-25's ISO results.

41.    Defendant's MA-25 with the "True HEPA H13" filter fared no better under the IEST standard.  At .25-0.30 microns the filter had an efficiency of 98.63%, well-below the HEPA standard.  See Figure 6 for MA-25's IEST results.

| MPPS | | | | | | | | | Pressure Drop (kPa) |
|---|---|---|---|---|---|---|---|---|---|
| Filter ID | Port | Particles at: (in nanometers) | | | | | | | |
| | | 32 | 40 | 50 | 63 | 79 | 100 | | |
| 27867-2-1 | Upstream | 100063 | 101718 | 100356 | 102145 | 100852 | 102508 | | 0.05 |
| | Downstream | 28802 | 32400 | 32743 | 31704 | 26589 | 22914 | | |
| | Penetration (%) | 28.784 | 31.853 | 32.627 | 31.038 | 26.364 | 22.353 | | |
| Mean Penetration (%) | | 28.784 | 31.853 | 32.627 | 31.038 | 26.364 | 22.353 | | |
| Mean Efficiency E (%) | | 71.216 | 68.147 | 67.373 | 68.962 | 73.636 | 77.647 | | |
| Mean Efficiency Ē₉₅% (%) | | 70.702 | 67.601 | 66.814 | 68.426 | 73.153 | 77.218 | | |

**Figure 5 – MA-25 with the "TRUE HEPA H13" Filter  (ISO Results)**

| Filter ID | Differential Pressure (kPa) | Port | Particles at: (in microns) | | | | Summed Data | |
|---|---|---|---|---|---|---|---|---|
| | | | 0.10-0.15 | 0.15-0.20 | 0.20-0.25 | 0.25-0.30 | 0.10-0.20 | 0.20-0.30 |
| 27867-2-1 | 0.05 | Upstream | 1060883 | 404727 | 337894 | 139206 | 1465610 | 477099 |
| | | Downstream | 29104 | 7172 | 5807 | 1909 | 36276 | 7716 |
| | | Efficiency$_{obs}$ (%) | 97.26 | 98.23 | 98.28 | 98.63 | 97.52 | 98.38 |
| | | Efficiency$_{95\%}$ (%) | 97.22 | 98.18 | 98.23 | 98.56 | 97.49 | 98.34 |

**Figure 6 – MA-25 with the "TRUE HEPA H13" Filter  (IEST Results)**

42.    Defendant's MA-40 with the "True HEPA H13" filter was tested under the ISO standard, the filtration efficiency at the most penetrating particle size (0.04 microns) was 79.415%. This falls so far below the standard that it does not even qualify for an E10, the lowest possible grade (penetration at ≤ 15%). See Figure 7 for the ISO results for the MA-40 with the "True HEPA H13" filter.

43.    Defendant's MA-40 with the "True HEPA H13" filter remained unsuccessful under the IEST standard.  At .25-0.30 microns the filter had an efficiency of 99.60%, below the HEPA standard.  See Figure 8 for the IEST results for the MA-40 with the "True HEPA H13" filter.

| Filter ID | Port | Particles at: (in nanometers) | | | | | | Pressure Drop (kPa) |
|---|---|---|---|---|---|---|---|---|
| | | 25 | 32 | 40 (MPPS) | 50 | 63 | 79 | |
| 27867-3-1 | Upstream | 100043 | 100614 | 100352 | 104582 | 100793 | 100521 | 0.08 |
| | Downstream | 18774 | 19353 | 20657 | 20264 | 17800 | 14969 | |
| | Penetration (%) | 18.766 | 19.235 | 20.585 | 19.376 | 17.660 | 14.891 | |
| Mean Penetration (%) | | 18.766 | 19.235 | 20.585 | 19.376 | 17.660 | 14.891 | |
| Mean Efficiency  E (%) | | 81.234 | 80.765 | 79.415 | 80.624 | 82.340 | 85.109 | |
| Mean Efficiency  Ē$_{95\%}$ (%) | | 80.847 | 80.373 | 79.005 | 80.237 | 81.969 | 84.776 | |

**Figure 7 – MA-40 with the "TRUE HEPA H13" Filter  (ISO Results)**

| Filter ID | Differential Pressure (kPa) | Port | Particles at: (in microns) | | | | Summed Data | |
|---|---|---|---|---|---|---|---|---|
| | | | 0.10-0.15 | 0.15-0.20 | 0.20-0.25 | 0.25-0.30 | 0.10-0.20 | 0.20-0.30 |
| 27867-3-1 | 0.08 | Upstream | 794176 | 291950 | 247086 | 104610 | 1086126 | 351696 |
| | | Downstream | 7919 | 1606 | 1311 | 421 | 9525 | 1732 |
| | | Efficiency$_{obs}$ (%) | 99.00 | 99.45 | 99.47 | 99.60 | 99.12 | 99.51 |
| | | Efficiency$_{95\%}$ (%) | 98.98 | 99.42 | 99.44 | 99.56 | 99.10 | 99.48 |

**Figure 8 – MA-40 with the "TRUE HEPA H13" Filter  (IEST Results)**

44.    Defendant's MA-40 with the "True HEPA H14" filter was tested under the ISO standard, the filtration efficiency at the most penetrating particle size (0.04 microns) was 94.494%. This qualifies for a grade of E10, the lowest possible grade

(penetration at ≤ 15%). See Figure 9 for the ISO results for the MA-40 with the "True HEPA H13" filter.

45.     Defendant's MA-40 with "true HEPA H14" filter was also tested under the IEST protocol by the lab commissioned by Plaintiff's counsel.  The following results demonstrate that the filter never met or exceeded 99.97% removal at any of the tested particle ranges.  At 0.25-0.30 microns specifically, the filter only managed 99.52% removal.  As such, the "true HEPA H14" is not HEPA-grade. See Figure 10 for the IEST results for the MA-40 with the "True HEPA H14" filter.

| MPPS | | Particles at: (in nanometers) | | | | | | Pressure Drop (kPa) |
|---|---|---|---|---|---|---|---|---|
| Filter ID | Port | 25 | 32 | 40 | 50 | 63 | 79 | |
| 27867-5 | Upstream | 100042 | 100087 | 100094 | 101454 | 100780 | 101294 | 0.10 |
| | Downstream | 4029 | 5362 | 5511 | 4814 | 3894 | 2913 | |
| | Penetration (%) | 4.027 | 5.357 | 5.506 | 4.745 | 3.864 | 2.876 | |
| Mean Penetration (%) | | 4.027 | 5.357 | 5.506 | 4.745 | 3.864 | 2.876 | |
| Mean Efficiency  E (%) | | 95.973 | 94.643 | 94.494 | 95.255 | 96.136 | 97.124 | |
| Mean Efficiency  $E_{95\%}$ (%) | | 95.822 | 94.465 | 94.314 | 95.091 | 95.990 | 97.001 | |

**Figure 9 – MA-40 with "TRUE HEPA H14" FILTER  (ISO Results)**

| Filter ID | Differential Pressure (kPa) | Port | Particles at: (in microns) | | | | Summed Data | |
|---|---|---|---|---|---|---|---|---|
| | | | 0.10-0.15 | 0.15-0.20 | 0.20-0.25 | 0.25-0.30 | 0.10-0.20 | 0.20-0.30 |
| 27867-5 | 0.10 | Upstream | 796910 | 301023 | 251825 | 106064 | 1097933 | 357889 |
| | | Downstream | 4129 | 1367 | 1122 | 512 | 5495 | 1634 |
| | | Efficiency$_{obs}$ (%) | 99.48 | 99.55 | 99.55 | 99.52 | 99.50 | 99.54 |
| | | Efficiency$_{95\%}$ (%) | 99.46 | 99.52 | 99.53 | 99.47 | 99.48 | 99.52 |

**Figure 10 – MA-40 with "TRUE HEPA H14" FILTER  (IEST Results)**

### D.     But For Defendant's HEPA Misrepresentations, Plaintiff And The Proposed Class Would Have Paid Less For Their Air Purifiers.

46.     By falsely claiming that its Air Purifiers had HEPA filters, and selling its replacement filters as HEPA, Defendant was able to overcharge Plaintiff and the putative class members in the amount of a HEPA-related premium associated with those claims.

47.    Defendant's HEPA claims appeared on the packaging that its Medify Air Purifiers came in and appeared on the webpages where its products were sold. Accordingly, those claims were seen by all purchasers of the Medify Air Purifiers and replacement filters.

48.    Defendant's HEPA claims misled reasonable consumers.  Defendant is one of the nation's leading air-purifier manufacturers, so consumers would reasonably believe Defendant's HEPA claims.  Moreover, consumers do not and cannot typically test the accuracy of a HEPA claim before purchasing an air purifier, and Defendant's HEPA claims were expressly false, not impliedly false.

49.    If Defendant had been truthful in its representations about the Products (i.e., that they were not HEPA grade), then the market price of those purifiers and filters would have been lower.

50.    Accordingly, Plaintiff and the proposed Class paid for Defendant's Products at artificially inflated prices.

## CLASS ALLEGATIONS

51.    ***Class Definition***.  Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of herself and all other similarly situated consumers, and seek to represent a class (the "Class") defined as:

> All natural persons in California who purchased a Medify MA-25 or Medify MA-40 or their respective replacement filter during the applicable statutory period.

52.    Excluded from the Class are governmental entities; Defendant; and Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

53.    Plaintiff reserves the right to modify or expand the definition of the Class to seek recovery on behalf of additional persons as facts are learned in further investigation and discovery.

54.    ***Numerosity.***  Members of the Class are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery of Defendant's records.  Class members may be notified of the pendency of this action by mail, email, publication, and/or other media, including social media.

55.    ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

    a.  Whether the Products are in fact HEPA-grade;

    b.  Whether Defendant's express representations about the capability of the Products included false and/or misleading statements and/or omissions;

    c.  Whether Defendant knowingly made false HEPA claims about the Products;

    d.  Whether Defendant's representations were material;

    e.  Whether an objectively reasonable consumer would have been misled by Defendant's HEPA claims; and

    f.  Whether Defendant's HEPA claims allowed it to charge more for the Products than it otherwise could have.

56.    ***Typicality.***  Plaintiff's claims are typical of the claims of the proposed Class because Plaintiff, like all members of the Class, were induced by Defendant's false and misleading warranties to purchase Defendant's Products without knowing that the Defendant's claims about the Products' filter were false and misleading.  The representative Plaintiff, like all members of the Class, has been damaged by Defendant's misconduct in the very same way as the members of the Class.  Further, the factual bases of Defendant's misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

57.    ***Adequacy***.  Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class; she has retained counsel competent and experienced in prosecuting class actions; and she intends to prosecute this action vigorously.  The interests of the members of the Class will be fairly and adequately protected by Plaintiff and their counsel.

58.    ***Superiority***.  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also represents a potential for inconsistent or contradictory judgments.  By contrast, the class-action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Business & Professions Code § 17200, *et seq*.

59.    Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

60.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

61.    This claim is brought under the laws of California.

62.     Defendant violated California's UCL by engaging in unlawful, fraudulent, and unfair conduct (*i.e.*, violating each of the three prongs of the UCL).

**The Unlawful Prong**

63.     Defendant engaged in unlawful conduct by violating the CLRA and FAL as referenced herein.

**The Fraudulent Prong**

64.     As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA H13" filters, despite knowing that they did not.

65.     Defendant, as manufacturer and marketer of the Products, was in a position to know (and did know) the true quality and capability of its Products but affirmatively warranted that the Products had a greater purifying ability than they actually did.

66.     As a result of these false and misleading practices, Defendant induced Plaintiff and the members of the Class to purchase the Products that Plaintiff and the class members would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products.

**The Unfair Prong**

67.     Defendant's conduct was unfair because, by claiming that its Products would purify 99.97% of airborne particulates, Defendant deceived consumers into believing that the Products' filters and replacement filters were HEPA-grade—a high standard for air purifying—even though they are not.  This is unfair because it led Plaintiff and the members of the Class to purchase the Products that they otherwise would not have, or would have paid substantially less for, had they not been advertised as "HEPA" or "True HEPA."  Defendant's misleading practice was also unfair because it gave Defendant an unfair advantage over competitors to the extent that Defendant's Air Purifiers are among the best-selling air purifiers in the marketplace, doing millions of dollars in sales per month.

68.    The FTC has determined that false representations regarding the efficacy of HEPA air purifiers and filters constitute an unfair and deceptive trade practice.

69.    Plaintiff and the Class members could not have reasonably avoided the injury.  Only Defendant was aware that its Air Purifiers did not possess HEPA filters.

***

70.    For all prongs, Defendant's false and misleading conduct was intended to induce reliance, and Plaintiff and members of the Class saw, read, and reasonably relied on Defendant's false and misleading warranties about the filtration capabilities of its Air Purifiers and replacement filters.  Defendant's deceptive, misleading, and unfair conduct was a substantial factor in Plaintiff the Class's purchasing decisions.

71.    Defendant's misrepresentations were a substantial factor and proximately caused the damages and loss to Plaintiff and the members of the Class.

72.    There was no benefit to consumers or competition from falsely claiming that the Products were of a quality that they were not.

73.    Plaintiff and the members of the Class have suffered harm as a result of Defendant's violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid had Defendant advertised its Products truthfully.

<ins>**COUNT II**</ins>
**Violations of California's False Advertising Law ("FAL")**
**Business & Professions Code § 17500, *et seq.***

74.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-52 of this Complaint.

75.    Plaintiff brings this claim individually and on behalf of the members of the Class.

76.    This claim is brought under the laws of California.

77.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or service, . . . or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

78.     During the applicable statutory period, Defendant committed acts of false advertising, as defined by the FAL, by making false and misleading representations about its Products' filters being HEPA-grade to attract more purchasers than its Products would otherwise have received.  Likewise, Defendant's false advertising induced consumers to purchase the Products or pay more for the Products than consumers otherwise would have.

79.     Defendant knew or should have known, through the exercise of reasonable care, that its claims about its Products' HEPA-grade filters were untrue and misleading.

80.     Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

81.     As a direct and proximate result of these acts, consumers have been and are being harmed, including Plaintiff and the members of the Class.  Plaintiff and the members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiff, and the members of the Class would not have purchased Defendant's Products or would have paid substantially less for the Products had Defendant not advertised them as "HEPA" or "True HEPA"; (b) Plaintiff and the members of the Class paid an increased price for the Products based on this advertising; and (c) the Products did not confer the value they promised to confer because they did not actually contain HEPA filters.

82.    Plaintiff and the Class are therefore entitled to: (a) full restitution of all monies paid to Defendant as a result of their deceptive practices; (b) interest at the highest rate allowed by law; and (c) the payment of Plaintiff's attorneys' fees and costs.

## COUNT III
### Violations of California's Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*

83.    Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

84.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

85.    This claim is brought under the law of California.

86.    Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

87.    Plaintiff and members of the Class are "consumers," as defined by Cal. Civ. Code § 1761(d).

88.    The Products purchased by Plaintiff and the Class are "goods" as defined by Cal. Civ. Code § 1761(a).

89.    The purchases by Plaintiff and the Class constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

90.    As alleged more fully above, Defendant has violated the CLRA by furnishing false and misleading statements about the quality and capabilities of its Products to attract and induce more consumers to purchase its Products than would have otherwise been induced and attracted to the Products without those false and misleading statements.

91.    As a result of engaging in such conduct, Defendant has violated California Civ. Code §§ 1770(a)(5), (a)(7) and (a)(9).

92.    Defendant's conduct was likely to deceive, and did deceive, Plaintiff, the members of the Class, all of whom are reasonable consumers.  Defendant knew

or should have known through the exercise of reasonable care, that its claims about its Products' filtration capabilities were false and misleading.

93.      Defendant's representations about its Products' HEPA filter were intended to induce reliance, and Plaintiff and the members of the Class, read, and reasonably relied on the false and misleading affirmative representations when deciding to purchase Defendant's Products.  Defendant's deceptive conduct was a substantial factor in Plaintiff's purchase decisions and the purchase decisions of the proposed Class.

94.      Plaintiff and members of the Class have suffered harm as a result of these violations of the CLRA because they incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

95.      In compliance with the provisions of California Civil Code § 1782, Counsel for Plaintiff sent a written notice to Defendant on February 21, 2025, informing Defendant of their intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Defendant did not provide such relief. Accordingly, Plaintiff seek money damages under the CLRA to the fullest extent permitted.

## COUNT IV
**Violations of California's Unfair Competition Law ("UCL")**
**Business & Professions Code § 17200, *et seq.***

90.      Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

96.      Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the laws of California.

97. As alleged in detail above, Defendant misrepresented material facts about the Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA" filters, despite knowing that they did not.

98. Defendant was in a position to know (and did know) the true quality and capability of its Products, but it affirmatively warranted that the Products had HEPA filters, when in truth they did not. In fact, Plaintiff is informed and believe that Defendant knew through its own testing that its Products were not HEPA-grade, and were being falsely advertised as having HEPA filters.

99. Defendant's misrepresentations, upon which Plaintiff and the members of the Class relied, were intended to induce, and actually did induce, Plaintiff and the members of the Class to purchase the Products. Defendant induced Plaintiff and the members of the Class to purchase the Products that Plaintiff and the members of the Class would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products.

100. Defendant's fraudulent actions caused damages to Plaintiff and the Class who are entitled to damages and other legal and equitable relief as a result.

<u>**COUNT V**</u>
**Violations of California's Unfair Competition Law ("UCL")**
**Business & Professions Code § 17200, *et seq*.**

101. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

102. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the laws of California.

103. As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA" filters, despite knowing that they did not.

104.   Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

105.   Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

106.   Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Products would contain true HEPA filters. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

107.   Defendant's acceptance and retention of these benefits of the payments from Plaintiff and the Class under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Class.

108.   Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

**COUNT VI**
**Breach of Express Warranty**

109.   Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

110.   Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the laws of California.

111.   As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had "HEPA" or "True HEPA" filters, despite knowing that they did not.

112.   Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

113.    Substantial benefits have been conferred on Defendant by Plaintiff and the Class through the purchase of the Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed Class the following relief against Defendant:

(a)    An order certifying the Class and naming Plaintiff's attorneys as Class Counsel to represent the members of the Class;

(b)    An order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c)    Compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(d)    Prejudgment interest on all amounts awarded;

(e)    Restitution and all other forms of equitable monetary relief;

(f)    An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(g)    Granting such other and further relief as many be just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.


Dated:  April 8, 2025                        **BURSOR & FISHER, P.A**.

By:    /s/ *L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
lsironski@bursor.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.    I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.    The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff Sarah Wertheimer resides in this District.

3.    Plaintiff Sarah Wertheimer is a resident of Los Angeles, California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on April 8, 2025, at Walnut Creek, California.


_____*/s/ L. Timothy Fisher*_____
L. Timothy Fisher